# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No.  00-2176

_____

LARRY PHILLIPS,                   *
                                     *

        Plaintiff/Appellee,         *  Appeal from the United States
                                       *  District Court for the Western
    v.                                  *  District of Missouri
                                       *

CATHY COLLINGS,             *
                                     *

        Defendant/Appellant.      *
                                       *

_____

Submitted:  April 11, 2001
Filed:  July 19, 2001

_____

Before BYE and BEAM, Circuit Judges, and MELLOY,[1] District Judge.

_____

MELLOY, District Judge.

Cathy Collings ("Collings") appeals the district court's[2] denial of her motion for judgment as a matter of law, and in the alternative, the denial of her motion for a new trial in this civil rights action filed by Larry Phillips ("Phillips").  We affirm.

---

[1]The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa, sitting by designation.

[2]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

# I. <u>BACKGROUND</u>

In 1994, Phillips was hired as a social service worker by the State of Missouri in the Department of Social Services, Division of Family Services ("DFS"). Phillips was assigned to the Kansas City office in the foster care division licensing unit, a job that entailed recruiting, interviewing and licensing potential foster parents.

Phillips' immediate supervisor in the Kansas City office was Collings, who in turn was immediately supervised by Rosalyn Wilson ("Wilson"). From the time he was hired in March 1994, until March 1995, Phillips received adequate or complimentary job performance evaluations from his supervisors. In fact, in March of 1995, Collings gave Phillips a positive reference to begin work on a Master's degree in social work through a program offered by the DFS.

In April of 1995, a dispute arose between Collings and Phillips after the two had a conversation about the licensing of foster parents with alternative lifestyles, such as homosexuals, unmarried couples, and persons involved in extramarital affairs. Phillips made clear to Collings that his religious beliefs would not permit him to license certain persons as foster parents, including those living in an openly homosexual relationship. Phillips testified that Collings became visibly defensive and adversarial with him after he made his beliefs known and ultimately complained about the incident to Wilson.

The following day both Collings and Phillips met with Wilson to discuss what had transpired. Phillips explained to Wilson that his religion taught him that "homosexuality was an abomination" and prevented him from approving homosexuals as foster parents. Wilson responded to Phillips that it was brought to her attention that his beliefs were impairing his ability to do his job.

Phillips testified that after these meetings, Collings began ignoring him during staff meetings and became increasingly curt with him during other everyday encounters.

Then, in September 1995, Collings authored an evaluation of Phillips and suggested that he be terminated, in part because of his religious views. Specifically Collings wrote in her evaluation:

> Mr. Phillips has difficultly accepting [sic] non-discrimination role by requesting not being assigned work that is counter to his religious, moral, or value beliefs. This has been evident because of the requests that he has made in not being assigned any 'alternative lifestyle' studies, and his continued discussion that it is 'illegal' for the agency to license unmarried couples, and homosexuals for foster care licensure.

This draft evaluation was submitted to Wilson and Richard Matt, the Deputy Director of the Children's Division in the DFS. After the evaluation went through revisions and reviews by different people, Collings' original recommendation of termination was changed to "needs improvement." Her once four page evaluation evolved into a 53 page evaluation that criticized virtually every aspect of Phillips' job performance. The evaluation did not follow the traditional format and was the longest evaluation that Phillips had ever received. It also contained extensive "Corrective Action Plans," including remedial training.

Because of the growing conflict with Collings, Phillips sought and was granted a transfer to a separate division of DFS in Independence, Missouri, which became effective January 16, 1996. There Phillips worked as a social worker in the Child Abuse/Neglect Division. It was at this time, while working in a new position under a new supervisor with a new job description, that Phillips received his voluminous performance appraisal from Kansas City.

Phillips was later terminated for reasons unrelated to this appeal.

Phillips brought claims against Collings for religious discrimination and harassment pursuant to 42 U.S.C. § 1983. A jury found for Phillips on his

discrimination claim against Collings but did not reach a verdict on the harrasment claim. The jury awarded $1,500.00 in compensatory damages and $25,000.00 in punitive damages.[3] The district court denied Defendant Collings' renewed motion for judgment as a matter of law or, in the alternative, motion for a new trial. This is an appeal of the district court's ruling.

## II. DISCUSSION

### A.

We review a court's grant or denial of judgment as a matter of law de novo, using the same standards as the trial court. See Stauch v. City of Columbia Hts., 212 F.3d 425, 429 (8th Cir. 2000). Pursuant to Rule 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a); see also Weisgram v. Marley Co., 528 U.S. 440, 447-48 (2000). In making this determination, the court must draw all reasonable inferences in favor of the nonmoving party without making credibility assessments or weighing the evidence. See Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-555 (1990); see also Kingserlow v. CMI Corp., 217 F.3d 1021, 1025 (8th Cir. 2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-151 (2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

---

[3]Phillips also brought claims of religious discrimination and harassment against Wilson, Matt, Carmen Schulze and the State of Missouri pursuant to 42 U.S.C. § 1983 and Title VII. The jury returned defense verdicts on Phillips' discrimination claims and did not return a verdict on the harassment claim or Title VII claims. The claims the jury could not reach a verdict on were subsequently settled. No cross-appeal was filed on the claims that the jury resolved in the defendants' favor. As a result, the claim that is the subject of this appeal is the only remaining issue before the court.

250-251 (1986)).

> Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.

Reeves, 530 U.S. at 151. It is "[w]hen the record contains no proof beyond speculation to support the verdict, [that] judgment as a matter of law is appropriate." Kingserlow, 217 F.3d at 1026 (internal quotations omitted).

**B.**

Collings raises three issues on appeal. First, she claims Phillips failed to establish he suffered an adverse employment action and his discrimination claim therefore fails. Second, she maintains she is entitled to qualified immunity for her actions. Finally, Collings contends that the marshaling instruction for Phillips' § 1983 claim erroneously eliminated the element of intent.

1.    Adverse Employment Action

Phillips contends that Collings discriminated against him at work based on his religious beliefs. In order to prevail on this claim, Collings argues Phillips must establish he suffered an adverse employment action. Phillips counters that a claim for discrimination pursuant to 42 U.S.C. § 1983 does not require a showing of an adverse employment action and, in the alternative, even were this Court to conclude that such a showing need be made, Collings' actions do in fact rise to the level of adverse employment action. Because we find Collings' actions did constitute an adverse employment action, we need not determine for purposes of this appeal whether

discrimination claims premised on 42 U.S.C. § 1983 require a showing of an adverse employment action.

Collings' challenged actions are the draft evaluation in which she recommended Phillips' termination, in part because of his religious beliefs, and the highly critical revised evaluation, 53 pages in length, that castigated every aspect of Phillips' work performance, imposed remedial training, corrective action plans, and was part of Phillips' personnel file. Collings argues that, as a matter of law, Phillips suffered no adverse employment action because these actions did not materially alter the terms or conditions of his employment.

Proof of an adverse employment action requires a "'tangible change in duties or working conditions that constitute a material disadvantage.'" Cossette v. Minnesota Power & Light, 188 F.3d 964, 972 (8th Cir. 1999) (quoting Manning v. Metropolitan Life Ins. Co., Inc., 127 F.3d 686, 692 (8th Cir. 1997)). We have indicated, however, that actions short of termination or decrease in pay may still constitute adverse employment actions. See Bassett v. Minneapolis, 211 F.3d 1097, 1105 (8th Cir. 2000) (noting "a series of retaliatory conduct falling short of discharge or termination can, as a matter of law, constitute an adverse action"); see also Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir. 1997) (finding reduction of duties, disciplinary action, negative personnel reports, "papering" a file, and employer-required remedial training that adversely affect or undermine employee's position constitute adverse employment action).

A poor performance evaluation, alone, typically does not constitute an adverse employment action. See Spears v. Missouri Dep't. of Corrections and Human Res., 210 F.3d 850 (8th Cir. 2000) (holding an evaluation that was changed from "highly successful" to "successful" which "demeaned [plaintiff] in the eyes of her coworkers" is insufficient to transform an unfavorable evaluation into an adverse employment action); see also Enowmbitang v. Seagate Tech. Inc., 148 F.3d 970, 973-74 (8th Cir.

1998) (holding allegations of an unfair poor evaluation are insufficient to state a claim of discrimination where the poor evaluation was not used to plaintiff's detriment in any way); and Cossette, 188 F.3d at 972 (finding a negative "evaluation [which] resulted in a loss of status or prestige without any material change in [plaintiff's] salary, position, or duties" is not considered an adverse employment action). However, Collings' highly negative evaluations are distinguishable from those faced by the plaintiffs in Spears, Cossette, and Enowmbitang. The most striking distinction, of course, is the fact that Collings recommended Phillips' termination in her original draft of Phillips' evaluation. This recommendation was given to Collings' supervisor and then forwarded on to the Deputy Director of Phillips' Division. It was only after their review of the evaluation that the recommendation of "termination" was altered to an "improvement expected" appraisal. This was not the only alteration however. Collings proceeded to craft a 53 page evaluation, critiquing every aspect of Phillips' performance; a performance that was considered adequate in previous evaluations and was sufficient to warrant Collings' recommendation of Phillips to a Master's Degree Program in Social Work. Indeed, this final evaluation was like no other received by Phillips nor any of his co-workers. Not only was Collings' final evaluation of Phillips uncharacteristically long and extraordinarily negative, it contained detailed "Corrective Action Plans" which covered most every area of Phillips' work and included remedial training.

The present facts are more akin to those of Kim v. Nash Finch where Kim alleged retaliation based on the filing of a discrimination claim. 123 F.3d at 1060. Specifically, Kim alleged that his duties were reduced, he received much lower performance evaluations than he had received before filing his discrimination charge, and he was required to undergo special remedial training. See id. There was also evidence that Nash Finch had 'papered' his personnel file with negative reports, including two written reprimands. See id. In Kim, we found "as a matter of law, defendant's conduct, which included reduction of duties, disciplinary action and negative personnel reports, as well as required remedial training, constituted adverse

employment action." Likewise, we find Collings' actions, the evaluation recommending Phillips' termination and the final 53 page evaluation, complete with corrective action plans and remedial training, are tantamount to those adverse employment actions taken against Kim.

Collings argues that her "draft" evaluation of Phillips, which was never in fact implemented, cannot constitute an adverse employment action because it did not have a tangible effect on his employment duties. While it is true that a draft evaluation alone could not be considered an adverse employment action, we consider the cumulative effect of Collings' discriminatory actions rather than determining whether any individual action upon which the claim relies was sufficiently adverse. See Kim, 123 F.3d at 1060 (noting that "we need not decide in the present case whether each act in itself constituted actionable 'adverse employment action' because Kim essentially claimed that Nash Finch had systematically retaliated against him, that is, that all the acts were taken in response to his filing the employment discrimination charge and were thus connected to one another"). Collings first recommended to Phillips' supervisors that he be terminated based in part on his religious beliefs. After this recommendation went unheeded by her superiors, she proceeded to create an evaluation unprecedented in length and malediction, and suggested Phillips carry out detailed corrective action plans. Collings then delivered this evaluation to Phillips after he was transferred to another division, despite the fact he was no longer under her supervision and was in an entirely new position. Viewing the record in this vein, the Court finds her calculated course of conduct constituted an adverse employment action.

Collings again argues that the corrective action plans of Phillips' final evaluation cannot be considered an adverse employment action because Phillips' transfer rendered them moot and they had no tangible effect on his employment. We find, however, that the fact that her recommended corrective action plans were not ultimately implemented is of no moment where the record supports a finding that he requested a transfer to avoid Collings' continued ridicule based on his religious beliefs. Indeed the record

clearly reveals that Collings, who could not unilaterally terminate Phillips, nor deny his transfer, did everything she could to disrupt his employment. Had Collings' corrective action plans been implemented they would signify a "tangible change in [Phillips'] duties or working conditions that constitute a material disadvantage." Cossette, 188 F.3d at 972. Collings cannot avoid this conclusion by arguing Phillips' transfer made her actions ineffective when it was her adverse actions which predicated the transfer in the first instance.

Viewing the record as a whole, we find Collings' actions are clearly "'more disruptive than a mere inconvenience or an alteration of job responsibilities' [or] [c]hanges in duties or working conditions that cause no materially significant disadvantage." Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994) (quoting Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). The jury's finding that Collings did everything in her power to adversely affect Phillips' employment is amply supported by the record evidence. The district court's denial of Collings' motion for judgment as a matter of law is affirmed.

2.    Qualified Immunity

"In resolving a case in which the defense of qualified immunity has been raised, this Court must determine whether the appellees asserted a violation of a federal right, whether that right was clearly established, and whether a reasonable official in [the defendant's] position would have known that [her] conduct violated that right." Walden v. Carmack, 156 F.3d 861, 868-69 (8th Cir. 1998). "What this means in practice is that whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Wilson v. Layne, 526 U.S. 603, 614 (1999) (internal quotations omitted). "This court has . . . taken a broad view of what constitutes 'clearly established law' for the purposes of a qualified immunity inquiry.

. . ." Boswell v. Sherburne County, 849 F.2d 1117, 1121 (8th Cir. 1988). "For a right to be deemed clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right.'" Buckley v. Rogerson, 133 F.3d 1125, 1128 (8th Cir. 1998) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). However, "[i]t is only necessary that the unlawfulness of the official's act [be] apparent in view of pre-existing law." Hall v. Lombardi, 996 F.2d 954, 958 (8th Cir. 1993). Therefore, if the law claimed to have been violated was clearly established, the qualified immunity defense ordinarily fails, "since a reasonably competent public official should know the law governing his conduct." Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).

In the instant case Collings recommended that Phillips be terminated because he requested "not being assigned work that is counter to his religious, moral or value beliefs." It is well settled that "[a]n employer is required to 'reasonably accommodate' the religious beliefs or practices of their employees unless doing so would cause the employer undue hardship." See Wilson v. U.S. West Communications, 58 F.3d 1337, 1340 (8th Cir. 1995) (citing 42 U.S.C. § 2000e(j)); see also Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 69 (1986); Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 74-75 (1977). Here, the record reflects that the occurrence of licensing homosexual couples as foster parents was exceedingly rare. Thus, accommodating Phillips' religious request not to license homosexual couples would have had virtually no effect on his employment duties nor the administration of the division. And although Collings contends she did in fact accommodate Phillips' religious beliefs, her recommendation that he be terminated because he requested "not being assigned work that is counter to his religious" beliefs aptly reveals she had no intention of accommodating them.

Collings maintains that her actions were premised on her fear that Phillips would discriminate against other persons and this warrants the cloak of qualified immunity. In Brown v. Polk County, Iowa, 61F.3d 650, 659 (8th Cir. 1995) (en banc) this court emphasized:

fear alone, even fear of discrimination or other illegal activity, is not enough to justify such a mobilization of governmental force against [the plaintiff]. The fear must be substantial and, above all, objectively reasonable. A phobia of religion, for instance, no matter how real subjectively, will not do. As Justice Brandeis has said, rather starkly, 'Men feared witches and burnt women.' Whitney v. California, 274 U.S. 357, 376 (1927) (Brandeis, J., concurring).

This Court finds that an objectively reasonable official would understand that it is unlawful to recommend the termination of a subordinate in the first instance, and then author an exceedingly negative and voluminous performance evaluation of the employee in the second instance, based on that employee's request for accommodation of his religious beliefs. Collings is not entitled to qualified immunity for her actions.

3.      Jury Instruction Governing the Unlawful Religious Discrimination

Collings moves for a new trial arguing the marshaling instruction for Phillips' § 1983 claim erroneously eliminated the intent element. The denial of a motion for a new trial is reviewed for an abuse of discretion. See Lamb Eng'g & Constr. Co. v. Nebraska Pub. Power Dist., 103 F.3d 1422, 1430 (8th Cir. 1997) (citing Farmland Indus., Inc. v. Morrison-Quirk Grain Corp., 54 F.3d 478, 483 (8th Cir. 1995)). When the motion for a new trial is premised on a challenged jury instruction, "[w]e . . . must determine simply whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." Martin v. Wal-Mart Stores, Inc., 183 F.3d 770, 773 (8th Cir. 1999) (quoting Kramer v. Logan County Sch. Dist., 157 F.3d 620, 625 (8th Cir. 1998)). "We will reverse only if we find that the error affected the substantial rights of the parties." Id.

The challenged instruction reads in pertinent part:

Your verdict must be for the plaintiff and against the defendant on plaintiff's religious discrimination claim if all the following elements have

-11-

been proved by the preponderance of the evidence:

> First, defendant Collings lowered plaintiff's performance appraisal and recommended that plaintiff be fired; and

> Second, plaintiff's religion was a determining factor in defendant Collings' actions.

If any of the above elements have not been proved by the preponderance of the evidence, your verdict must be for the defendant.

Religion is a determining factor only if defendant Collings would not have lowered plaintiff's performance appraisal and recommended that plaintiff be fired but for plaintiff's religion; it does not require that religion be the only reason for the actions taken by defendant Collings. You may find that religion was a determining factor if you find defendant's stated reason for her actions is not the true reason but is a pretext to hide discriminatory motivation.

Collings' argument is essentially that the "determining factor" element of the instruction does not require a jury to find she acted with the purpose to discriminate. Taking the record as a whole and viewing it in light of the evidence and applicable law, we find the above instruction was sufficient to convey to the jury that unless Collings' actions were intentional, Phillips could not recover. See Karcher v. Emerson Elec. Co., 94 F.3d 502, 509 (8th Cir. 1996) (holding instruction "plaintiff's sex was a motivating factor in defendant's decision" sufficiently conveyed to the jury specific intent).[4] Thus, Collings suffered no prejudice from the absence of more detailed instructions, and we find no reversible error.

---

[4]Our decision is guided, in part, by the fact that the district court's instruction closely tracks that of the model Eighth Circuit instruction which also does not specifically utilize the word "intent" as Collings contends is mandated by law. See Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit, 5.31 ("42 U.S.C. § 1983").

Accordingly, the district court's ruling is affirmed.


A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.