# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3052

_____

| | | |
|---|---|---|
| Arabian Agriculture Services Company, | * * * | |
| Appellee, | * * | Appeal from the United States District Court for the |
| v. | * | District of Nebraska. |
| | * | |
| Chief Industries, Inc., | * * | |
| Appellant. | * | |

_____

Submitted:   June 12, 2002

Filed:   October 16, 2002

_____

Before WOLLMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

In this diversity action, Chief Industries, Inc. (Chief) appeals the district court's[1] order granting judgment as a matter of law to Arabian Agriculture Services Co. (ARASCO) on Chief's affirmative defenses of misuse and comparative

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

negligence.[2] Chief also appeals several other of the district court's rulings, including its order denying Chief's motion for judgment as a matter of law. For the reasons discussed below, we affirm.

## I.

Between 1989 and 1992, ARASCO engaged in negotiations with Chief Industries UK Ltd. (Chief UK), a wholly owned subsidiary of Chief, to purchase sixteen 1,000 metric-ton hopper-bottom silos for ARASCO's facility at the port of Dammam, Saudi Arabia. These silos were to house grain for a period of thirty to forty-five days before it was shipped from the port. Chief designed the structures and supplied some of the silo components, including compression rings and steel support structures. During negotiations, ARASCO learned that some silos designed and manufactured by Chief had collapsed in Korea. Despite assurances from Chief that the collapses were not due to design defects, ARASCO insisted upon an extended warranty against product failure before continuing with the purchase. The parties agreed upon a seven-year limited warranty, in which Chief guaranteed that the components were free from defects in the composition of material, workmanship, and design. In addition, the warranty stated that the sole and exclusive remedies available in the case of problems with the silos were repair or replacement. The warranty explicitly stated that Chief would not be liable for consequential damages.

---

[2]ARASCO moved for a "directed verdict" pursuant to Federal Rule of Civil Procedure 50. Rule 50, however, makes clear that "[a] motion for judgment as a matter of law now encompasses all motions labeled as motions for judgment notwithstanding the verdict or motions for a directed verdict." Larson v. Miller, 76 F.3d 1446, 1452 n.3 (8th Cir. 1996) (en banc). Thus, we refer to ARASCO's motion using the current term, Rockport Pharmacy, Inc. v. Digital Simplistics, Inc., 53 F.3d 195, 197 n.1 (8th Cir. 1995), and "we will apply our cases discussing the standards for reviewing and analyzing motions for a directed verdict or judgment notwithstanding the verdict in analyzing this judgment as a matter of law." Smith v. World Ins. Co., 38 F.3d 1456, 1460 n.1 (8th Cir. 1994).

The silos were completed in 1993. They were arranged in two rows of eight silos each and were immediately used to store corn that arrived at the Dammam port. In early July 1995, a shipment of corn was unloaded into the silos and left there for approximately 100 days, more than twice as long as previous shipments. On October 10, 1995, one of the silos collapsed. In a domino effect, 14 of the 15 other silos also collapsed. In addition, a building housing electric controls was crushed.

ARASCO notified Chief of the collapse and requested a remedy under the extended warranty. After some investigation, Chief denied responsibility, concluding that the collapse was caused by clumping and bridging[3] of the corn after it was allowed to deteriorate in the silos during its extended storage. Chief theorized that the collapse was caused by the release of one such clump or bridge in silo 7. ARASCO sued to recover for the damage, contending that the collapse was caused by an inadequate and defective design.

At trial, both parties moved for judgment as a matter of law. The district court denied Chief's motion and granted ARASCO's motion with respect to Chief's affirmative defenses of misuse and comparative negligence. The jury then found for ARASCO on its warranty, strict liability, and negligent design claims and awarded a total of $1,466,507 in damages, of which some $88,000 represented consequential damages.

## II.

Chief first argues that the district court erred in granting ARASCO's motion for judgment as a matter of law on Chief's affirmative defenses of misuse and

---

[3]Bridging refers to the solidification of previously free-flowing corn into columns or arches within the silos. This solidification is caused by the deterioration of the corn from heat damage and the growth of fungus.

comparative negligence.  We review the grant or denial of judgment as a matter of law de novo, applying the same standards used by the district court.  Phillips v. Collings, 256 F.3d 843, 847 (8th Cir. 2001).  According to Rule 50, judgment as a matter of law should not be granted unless "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  Fed. R. Civ. P. 50(a)(1).  In applying this standard, we must "draw all reasonable inferences in favor of the nonmoving party without making credibility assessments or weighing the evidence."  Phillips, 256 F.3d at 847 (citations omitted).  "A reasonable inference is one 'which may be drawn from the evidence without resort to speculation.'"  Fought v. Hayes Wheels Int'l, Inc., 101 F.3d 1275, 1277 (8th Cir. 1996) (quoting Sip-Top, Inc. v. Ekco Group, Inc., 86 F.3d 827, 830 (8th Cir. 1996)).  Thus, judgment as a matter of law is appropriate "[w]hen the record contains no proof beyond speculation to support [a] verdict."  Sip-Top, Inc., 86 F.3d at 830 (citation omitted).

Chief challenges the district court's ruling, arguing that (1) the court erred in excluding expert testimony concerning causation; and (2) even in the absence of such testimony, the evidence presented at trial was sufficient to submit the issues of misuse and contributory negligence to the jury.  We disagree on both points.

Chief points out that its experts were prepared to testify as to the approximate mass of bridged corn necessary to cause silo 7 to collapse.  Because these calculations were not disclosed until well into the trial, the district court excluded the testimony as untimely.  According to Chief, however, the delay was caused by ARASCO's own untimely disclosure of key evidence providing the foundation for the calculations.  This "key evidence," a photograph of the inside of silo 7, was not turned over to Chief until three days before the start of trial.  Thus, Chief argues, it was "manifestly unfair" to exclude the calculations.

In rejecting this argument, the district court first noted that the photograph did not show a mass of corn constituting a bridge or column, as Chief's experts assumed in making their calculations. The court then concluded that the calculations could have been made earlier. The testimony indicated that Chief's investigator had observed and photographed the interior of silo 7 shortly after the collapse. Thus, according to the district court, these photographs "should have allowed Chief's experts to arrive at the calculations" prior to trial.

After reviewing the record, we cannot find that the district court abused its discretion in reaching this conclusion. See Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1008 (8th Cir. 1998) (standard of review). The calculations were not disclosed in accordance with Federal Rule of Civil Procedure 26. Thus, the rules permitted the court to exclude the untimely testimony "unless the failure to disclose was either harmless or substantially justified." Id.; Fed. R. Civ. P. 37(c)(1). In rejecting Chief's explanation for the delay, the court essentially found that Chief's failure to disclose the calculations until trial was not substantially justified. The court also implied that the delay was not harmless. (See Trial Tr. at 1395:7-8 (indicating that admitting the calculations would result in "trial by ambush"); id. at 1442:18-21 (finding that the late disclosure was prejudicial to the plaintiff).) These conclusions are amply supported by the record. See Trost, 162 F.3d at 1008 (noting that when we review for an abuse of discretion, we will reverse only if the district court's decision "was based on 'an erroneous view of the law or a clearly erroneous assessment of the evidence'" (citation omitted)). Accordingly, we find that the district court acted well within its discretion in excluding the untimely calculations.

We turn next to Chief's claim that, even in the absence of these calculations, it had submitted sufficient evidence of misuse and contributory negligence to defeat ARASCO's motion for judgment as a matter of law. In granting this motion, the district court determined that although Chief had presented sufficient evidence on the issue of mismanagement, its experts had failed to demonstrate a plausible causal link

between ARASCO's alleged mishandling of the grain and the structural failure of silo 7. Thus, the court concluded, Chief had not presented a prima facie case of misuse, and without misuse, there was no comparative negligence. After reviewing the record, we agree with the district court that no reasonable jury could have found for Chief on the issue of causation. See Fed. R. Civ. P. 50(a)(1). The evidence presented by Chief indicated that corn could clump and that, theoretically, lateral forces from a falling column of grain could cause a silo to tip. Chief's experts did not, however, connect the general theory of a clump-caused collapse to the Dammam site conditions at the time of the actual collapse. In short, Chief's evidence did not demonstrate that the corn in silo 7 could clump in such a quantity to pull down the silo. Without such evidence, the jury would have had to speculate as to whether ARASCO's alleged mismanagement caused silo 7 to fall. See Fought, 101 F.3d at 1277; see also Bauer v. J.B. Hunt Transp., Inc., 150 F.3d 759, 765 (7th Cir. 1998) ("Without a framework in which to evaluate [the possible contributing factors in an accident], the jury could only have speculated as to the causal relationship between the factors that [the expert] identified and the events at issue in the case."). Accordingly, we affirm the district court's grant of judgment as a matter of law on Chief's affirmative defenses of misuse and comparative negligence.

## III.

Chief also argues that the district court erred in denying its motion for judgment as a matter of law on the issue of strict liability. As noted above, we review this denial de novo. United Fire & Cas. Co. v. Historic Pres. Trust, 265 F.3d 722, 726-27 (8th Cir. 2001).

Citing Hilt Truck Line, Inc. v. Pullman, Inc., 382 N.W.2d 310 (Neb. 1986), Chief first contends that because ARASCO failed to show that a "sudden, violent event" caused the silos to fall, its strict liability claim cannot be sustained under Nebraska law. In Hilt Truck Line, the plaintiffs alleged that the trailers they had

purchased from the defendant had an inherent design defect, and they sought to recover their repair costs on theories of strict liability and negligence. At trial, however, the plaintiffs' evidence demonstrated that the damage resulted not from a violent occurrence, but from a gradual process of corrosion. Thus, the Nebraska Supreme Court concluded that the plaintiffs' strict liability claim failed as a matter of law, noting that "[i]n Nebraska, in order to recover in strict liability for the cost of repairs to the product, there must be proof that a sudden, violent event occurred which aggravated the inherent defect or caused it to manifest itself." Hilt Truck Line, 382 N.W.2d at 312 (citations omitted).

Citing this language, Chief contends that under Nebraska law "[a] sudden, violent event must cause the failure; the failure cannot itself be the sudden, violent event." We are not persuaded by Chief's interpretation. According to the Nebraska Supreme Court, it has, in essence, followed the "majority of courts that have considered the applicability of strict liability to recover damages to the defective product itself [and] have permitted use of the doctrine, at least where the damage occurred as a result of a sudden, violent event and not as a result of an inherent defect that reduced the property's value without inflicting physical harm to the product." Nat'l Crane Co. v. Ohio Steel Tube Co., 332 N.W.2d 39, 43 (Neb. 1983) (citations omitted). Here, ARASCO's damages were not the result of a defect that merely reduced the value of the silos. Instead, the collapse of the silos could certainly be characterized as a "sudden, violent event" that inflicted "physical harm to the product." Id.; see also id. at 44 (rejecting plaintiff's tort theories of recovery where plaintiff's damages resulted from "the purchase of defective or unsatisfactory products," as opposed to "physical harm caused by the defective product"). We therefore conclude that because ARASCO presented sufficient evidence demonstrating that its damages occurred as the result of a sudden, violent event, the district court did not err in submitting the strict liability claim to the jury. We also find that Chief's remaining arguments relating to the strict liability issue are without merit.

## IV.

Chief raises several additional objections, all of which we reject. As an initial matter, we cannot find that the district court abused its discretion in ordering the jury to disregard evidence of "grain clumping, bridging or other grain storage or handling issues," when determining Chief's potential liability. See Sherbert v. Alcan Aluminum Corp., 66 F.3d 965, 968 (8th Cir. 1995) (standard of review). This instruction was consistent with the court's rulings on Chief's affirmative defenses of misuse and contributory negligence, and other instructions made it clear that ARASCO bore the burden of proof on the issue of proximate cause. See id. ("Upon review, we must determine 'whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury.'" (citation omitted)). Thus, despite Chief's assertions to the contrary, excluding this evidence from the jury's consideration on the issue of liability did not improperly shift the burden of proof on proximate cause.

Nor did the district court err in refusing to give a limiting instruction regarding evidence relating to the collapse of silos in Korea. According to Chief, such evidence was irrelevant and "unduly prejudicial." Thus, Chief argues, the jury should have been specifically informed to disregard it.

The decision whether to admit "similar-incident" evidence is committed to the sound discretion of the district court. Novak v. Navistar Int'l Transp. Corp., 46 F.3d 844, 851 (8th Cir. 1995). A district court's refusal to give a limiting instruction on prior similar incidents is also reviewed under the abuse of discretion standard. See Kehm v. Procter & Gamble Mfg. Co., 724 F.2d 613, 621 (8th Cir. 1983). We have stated that in products liability actions, "[e]vidence of similar incidents may be relevant to prove the defendant's notice of defects, the defendant's ability to correct known defects, the magnitude of the danger, the product's lack of safety for intended uses, or causation." Lovett v. Union Pacific R.R. Co., 201 F.3d 1074, 1081 (8th Cir.

2000) (citation omitted).  After reviewing the record, we cannot find that the district court abused its discretion in concluding that the prior collapse of silos in Korea occurred under circumstances substantially similar to those in this case.  See J.B. Hunt Transp., Inc. v. General Motors Corp., 243 F.3d 441, 445 (8th Cir. 2001) ("[T]he party seeking admission of the [similar-incident] evidence must demonstrate that the circumstances between the two incidents are substantially similar." (citation omitted)).[4]  Thus, we cannot find that the court abused its discretion in rejecting Chief's proposed jury instruction.  Furthermore, we note that Chief was afforded the opportunity to examine and cross-examine witnesses extensively regarding the Korean incidents.  We therefore agree with the district court that even if it erred in refusing to give a limiting instruction, Chief has failed to demonstrate that the error was prejudicial.  See Lovett, 201 F.3d at 1081 ("We will not grant a new trial or set aside a verdict based on an incorrect evidentiary ruling absent a clear and prejudicial abuse of discretion." (citation omitted)).

Finally, Chief argues that the district court erred in concluding that the warranty failed of its essential purpose and that ARASCO therefore was not limited to the repair or replacement remedies provided under the warranty.  Section 2-719(1) of Nebraska's Uniform Commercial Code (U.C.C.) permits contracting parties to restrict the measure of damages recoverable by, for example, limiting the buyer's remedies to repair or replacement.  Neb. Rev. Stat. U.C.C. § 2-719(1); see John Deere Co. v. Hand, 319 N.W.2d 434, 437 (Neb. 1982).  Such limitations, however, are

---

[4]The Korean incidents involved events at the Dae Je site and Dang Jin site.  In responding to Chief's motion in limine, ARASCO contended that evidence regarding the Dae Je incident was relevant to Chief's bridging defense.  The evidence indicated that the soy meal stored in the silos at Dae Je bridged and the bridges fell, but the silos themselves did not collapse.  Thus, ARASCO sought to use this evidence to demonstrate, inter alia, that (1) silos are damaged by bridging only when the product stored is soy meal, and (2) even then, such bridging has not been known to cause the collapse of a silo.  It therefore appears that Chief has improperly characterized the Dae Je evidence as "similar-incident" evidence.

subject to § 2-719(2), which states that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in the Uniform Commercial Code." Neb. Rev. Stat. U.C.C. § 2-719(2). As we have explained in a case involving an essentially identical provision of the Minnesota U.C.C., the rationale underlying § 2-719(2) is as follows:

> "This Court would be in an untenable position if it allowed the defendant to shelter itself behind one segment of the warranty when it has allegedly repudiated and ignored its very limited obligations under another segment of the same warranty, which alleged repudiation has caused the very need for relief which the defendant is attempting to avoid."

Soo Line R.R. Co. v. Fruehauf Corp., 547 F.2d 1365, 1370 (8th Cir. 1977) (quoting Jones & McKnight Corp. v. Birdsboro Corp., 320 F. Supp. 39, 43-44 (N.D. Ill. 1970)).

In this case, it is undisputed that Chief refused to repair or replace the silos. According to Chief, however, its denial of coverage under the warranty "is akin to an insurer's good-faith denial of a liability claim after reasonable investigation." Thus, Chief argues, because its investigation revealed a reasonable basis for denying the claim (i.e., that ARASCO's poor grain management practices caused the collapse), its obligations under the warranty were not triggered until a defect was proven. We are not persuaded by Chief's analogy. As the Nebraska Supreme Court explained, "[t]he purpose of an exclusive remedy of 'repair or replacement' from a buyer's viewpoint is to give him goods which conform to the contract within a reasonable time after a defect is discovered." John Deere, 319 N.W.2d at 437. The alleged defect in this case was discovered shortly after the silos collapsed, not, as Chief argues, when the jury came back with a verdict for ARASCO. To find otherwise would, in our opinion, undermine the protections afforded to parties under § 2-719(2)

-10-

and deprive ARASCO "of the substantial value of the bargain."[5]  Neb. Rev. Stat. U.C.C. § 2-719 cmt. 1.  Thus, given Chief's undisputed failure to perform its obligations under the warranty, we agree that the warranty's limited remedy provision failed in its essential purpose.  We therefore conclude that Chief's refusal to honor its obligations under the warranty prevents it from now sheltering itself behind the warranty's recovery limitations.  See John Deere, 319 N.W.2d at 437 (stating that when an exclusive remedy fails of its essential purpose, the aggrieved buyer may "invoke any remedies available under the Uniform Commercial Code," including "provable consequential damages, even though specifically excluded by the written warranty" (citations omitted)).

The judgment is affirmed.

---

[5]In McDermott, Inc. v. Clyde Iron, a case cited by Chief, the warrantor replaced the allegedly defective product, but then asserted a counterclaim for the cost of the replacement product in the warrantee's lawsuit for property damage.  979 F.2d 1068, 1070, 1073 (5th Cir. 1992), rev'd on other grounds, 511 U.S. 202 (1994).  The Fifth Circuit concluded that the limited warranty provision had not failed in its essential purpose, noting the following:  "[The warrantee] received a new [product] and at no cost.  [The warrantor] never denied its obligation to replace a defective [product].  It only denied that the [product] was defective.  It lost that argument and honored its obligation."  Id. at 1073.  Here, Chief argues that it, too, has simply denied that the silos were defective.  What Chief fails to recognize, however, is that the warrantor in McDermott did replace the allegedly defective product.  It did not wait until the conclusion of extensive civil litigation to honor its obligation.  Thus, by choosing to proceed in this fashion, Chief bore the risk of losing on the issue of its warranty defenses and essentially forfeiting the protections of the limited remedy provision.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.