# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 01-3620

———————

| | | |
|---|---|---|
| Roy Jones, Christopher Gracier, | * | |
| Kirk Maeder, Ronald Cichowski, | * | |
| Austin Dehaas, | * | |
| | * | |
| Plaintiffs/Appellants, | * | Appeal from the United States |
| | * | District Court for the |
| Harvey Hobby, | * | District of Nebraska. |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| TEK Industries, Inc., a corporation, | * | |
| | * | |
| Defendant/Appellee. | * | |

———————

Submitted: December 13, 2002

Filed: February 11, 2003

———————

Before WOLLMAN, HEANEY, and MAGILL, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

Current and former inmates of the Nebraska State Penitentiary, Roy Jones, Christopher Gracier, Kirk Maeder, Ronald Cichowski, and Austin Dehaas (Inmates), initiated this action against TEK Industries, Inc. (TEK), their employer at the time the

alleged incidents occurred, claiming that they suffered religious discrimination in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C.§§ 2000e et seq.

Following the jury's adverse verdict, Inmates moved for judgment as a matter of law, or, in the alternative, for a new trial. It is from the district court's[1] denial of those motions that Inmates now appeal. We affirm.

## I. Background

Inmates practice the House of Yahweh religion. Practitioners of the House of Yahweh observe the Sabbath from sundown on Friday to sundown on Saturday. They may not eat pork, or any foods that have been prepared with or have contacted pork, or celebrate holidays, such as Christmas and Easter, that are not recognized by the House of Yahweh.

Inmates were employed by TEK while serving their sentences in the Nebraska State Penitentiary. TEK is a private corporation that runs a manufacturing facility in the prison, at which approximately 120 inmates are employed. Because TEK pays employees at least the minimum hourly wage, employment at TEK is desirable and competitive. TEK provides special meals to inmate employees four times per year to show appreciation for the employees' hard work. During the time-period relevant to this appeal, at least two of these meals were scheduled at Christmas and Easter.

TEK's attendance policy provides that employees receive thirty hours of absentee time for the six-month periods of January 1 to June 30, and July 1 to December 31. If the employee has not used his allotted absentee hours during the first six months of the year, the hours remaining may be added to his allotment for the

_____

[1]The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

-2-

second six-month period. Hours that have been accrued by employees but not used may not be carried over to the subsequent calendar year. Employees receive an additional seven days of paid holidays after having been employed by TEK for one year.

Employees whose absences exceed the allotted hours during a six-month period are placed on probation. The duration of probation correlates to the number of hours of work missed by an employee. If, after an employee is placed on probation, his absences continue to exceed his allotted absentee time, the employee is suspended for two days without pay. TEK terminates the employee if his absences continue. According to testimony adduced at trial, TEK did not enforce the probationary procedures against Inmates. Inmates who had violated the attendance policy were neither placed on probation nor suspended. TEK, however, terminated Inmates Jones and Gracier because of excessive absences. Gracier was reinstated ultimately, and continued to work for TEK until he resigned voluntarily and transferred to the Hastings Correctional Center. TEK did not terminate Maeder and Cichowski, and they were still employed by TEK at the time of trial. Dehaas resigned from TEK in good standing before he was transferred to the Lincoln Correctional Center.

During the week, TEK operates a morning shift from 7:30 a.m. until 11:00 a.m. and an afternoon shift from 11:45 a.m. until 3:45 p.m., although employees may work until 5 p.m. Under prison rules, TEK may not operate after 5 p.m. Because of the limited hours that the TEK facility is open during the week, TEK employees occasionally work on Saturdays. Prior to 1999, these shifts were voluntary. In 1999, after a significant increase in demand for TEK products and services, TEK instituted mandatory Saturday shifts. The number of mandatory Saturdays scheduled varied from shop to shop within TEK's facility: the assembly shop worked nine mandatory Saturdays in 1999, two in 2000, and none in 2001; the die maker shop worked six mandatory Saturdays in 1999, eleven in 2000, and one in 2001.

Prior to being hired by TEK, Inmates informed TEK of their religious beliefs and that they would be unable to work on Saturdays because it conflicted with their Sabbath. Inmates state that they were informed that Saturdays would be an optional workday. After the institution of mandatory Saturday workdays in 1999, Inmates refused to work on the Saturday shifts. Inmates used their absentee-hours to cover their Saturday absences. Inmates, however, also were absent for numerous other reasons, including illness and personal time.

## II. Discussion

### A.

We review a district court's denial of a motion for judgment as a matter of law de novo, employing the same standard as that of the district court. Phillips v. Collings, 256 F.3d 843, 847 (8th Cir. 2001). A court may render judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on an issue and all of the evidence directs against a finding for the nonmoving party. Id. at 847; see also Belk v. City of Eldon, 228 F.3d 872, 877 (8th Cir. 2000). We consider the facts in the light most favorable to the nonmoving party. Phillips, 256 F.3d at 847; Belk, 228 F.3d at 877.

We review a district court's denial of a motion for new trial with great deference, reversing only if the district court abused its discretion. Belk, 228 F.3d at 878. We "give great deference to [the district court's] judgment, because [it] has the benefit of hearing testimony and observing the demeanor of the witnesses throughout the trial." Bonner v. ISP Techs., Inc., 259 F.3d 924, 932 (8th Cir. 2001) (citing Sanford v. Crittenden Mem'l Hosp., 141 F.3d 882, 884 (8th Cir. 1998)). The grant of a motion for a new trial is inappropriate unless "the verdict is against the weight of the evidence and [] allowing it to stand would result in a miscarriage of justice." Lloyd v. Am. Airlines, Inc., 291 F.3d 503, 508-09 (8th Cir. 2002).

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise [] discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]" 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of religious discrimination under Title VII, Inmates must show that they have a bona fide religious belief that conflicts with an employment requirement; that they informed TEK of this belief; and that they were disciplined for failing to comply with the conflicting requirement of employment. Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 65-66 (1986) (quotation omitted); Seaworth v. Pearson, 203 F.3d 1056, 1057 (8th Cir. 2000) (per curiam).

The jury found that Inmates held sincere religious beliefs in the teachings and practices of the House of Yahweh religion and that Inmates had informed TEK of these beliefs. The jury also found, however, that Inmates failed to show that TEK disciplined or discharged them because of the alleged conflict between their religious beliefs and observances and the requirements of their employment.

Inmates argue that they suffered adverse employment actions as a result of their religious practices and beliefs. Inmates assert that they were terminated because of excessive absenteeism, and that their absences from work were the direct result of their observance of the Sabbath on Saturday. It is undisputed that TEK deducted hours from Inmates' allotted time for absences when Inmates missed work. Inmates Jones and Gracier, in fact, were terminated by TEK for excessive absenteeism. TEK reinstated Gracier eleven days after his termination; Gracier later resigned, after having requested a transfer to another facility.

Our review of the record leads us to conclude that the amount of time deducted as a result of Inmates' Saturday absences composed a minimal portion of the total hours deducted from their allotment. Furthermore, despite Saturday absences in observation of their faith, Inmates Maeder, Cichowski, and Dehaas were not

terminated by TEK for excessive absenteeism. Inmates have not shown that they would have retained their jobs with TEK—that they would not have been terminated for excessive absenteeism—had they worked on Saturdays and other religious festivals, in violation of the tenets of their faith. Thus, Inmates fail to prove the third element of a prima facie case for religious discrimination under Title VII: that they were disciplined for failure to comply with the conflicting requirement of their employment. Because the majority of Inmates' absences did not result from their observation of the Sabbath, the district court did not ignore the weight of the evidence in determining that there was a substantial evidentiary basis for the jury's verdict. Accordingly, the district court did not err in denying Inmates' motion for judgment as a matter of law on this issue, nor did it abuse its discretion in denying their motion for a new trial.

Inmates claim that they suffered adverse employment actions because they were neither promoted nor were given raises as quickly and to the same degree as were employees who did not practice the House of Yahweh religion. We conclude, however, that the record supports the jury's finding that Inmates did not suffer adverse employment actions.

Inmates' claims of religious discrimination included TEK's alleged refusal to provide an entree that satisfied Inmates' dietary restrictions at a bonus meal. Had Inmates established a prima facie case under Title VII, "the burden [would have] shift[ed] to the employer to show that accommodation [of the religious practice] would [have] result[ed] in undue hardship to the employer." Seaworth, 203 F.3d at 1057 (citations omitted).

Because Inmates failed to establish a prima facie case of discrimination, we need not reach the question whether TEK reasonably accommodated their religious beliefs. In any event, the jury determined that TEK had reasonably accommodated

Inmates' religious beliefs, both with respect to the mandatory Saturdays, as well as to the bonus meal, a finding that is supported by the evidence.

## B. Introduction of Criminal Convictions

Inmates argue that the district court abused its discretion by allowing TEK's counsel to ask Inmates to state the names of the crimes of which they had been convicted. Evidence of a felony conviction is admissible under Rule 609(a)(1) of the Federal Rules of Evidence, subject to the limitations of Rule 403. Inmates contend that the district court abused its discretion in finding that the enumeration of the specific crime committed was more probative than prejudicial under Rule 403.

"The district court has broad discretion in deciding whether to admit evidence at trial. We will reverse the district court only for a clear and prejudicial abuse of that discretion." United States v. Ford, 11 F.3d 1100, 1103 (8th Cir. 1994) (quoting United States v. Wright, 799 F.2d 423, 425 (8th Cir. 1986)). The jury was aware that Inmates were incarcerated at the Nebraska State Penitentiary, a medium/maximum security prison, during the time the incidents at issue in the trial occurred. The court determined that the evidence would assist the jury in evaluating the credibility of the witnesses' testimony. As we have written, "most jurors probably do not understand the range of offense connoted by the term felony, and thus [may] need to know the specific crime in order to evaluate its effect on credibility." Id. at 1003 (quoting Cummings v. Malone, 995 F.2d 817, 826 (8th Cir. 1993) (quotation omitted)). In this case, the specific details of the crimes were omitted, as were details about the victims, thus minimizing any potential prejudice to Inmates. Furthermore, the court instructed the jury explicitly that "the evidence of the crime for which a person is convicted and a sentence given is usable . . . only to test the credibility of the witness. . . . Nothing else." The court repeated this limiting instruction during its final instructions to the jury. We conclude that the court did not abuse its discretion in allowing the crimes to be enumerated.

Inmates' remaining contention is without merit and requires no discussion.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.