# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-4114

_____

| | | |
|---|---|---|
| First Security Bank, Administrator of the Estate of Sharon E. Johnston, | * * * | |
| Appellant, | * * | Appeal from the United States District Court for the |
| v. | * * | Eastern District of Arkansas. |
| Union Pacific Railroad Company, | * * * | |
| Appellee. | * | |

_____

Submitted: June 8, 1998

Filed: August 14, 1998

_____

Before WOLLMAN and MURPHY, Circuit Judges, and FENNER,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

First Security Bank, acting as administrator of the estate of Sharon E. Johnston, appeals from the judgment entered by the district court[2] following a jury verdict in favor of the defendant, Union Pacific Railroad Co.  We affirm.

_____

[1]The HONORABLE GARY A. FENNER, United States District Judge for the Western District of Missouri, sitting by designation.

[2]The Honorable William R. Wilson, United States District Judge for the Eastern District of Arkansas.

# I.

Ms. Johnston, a 36-year-old registered nurse, lived in Kensett, Arkansas, a small town approximately fifty miles northeast of Little Rock. Union Pacific controls two primary sets of tracks that run north and south through Kensett. Four railroad grade crossings, approximately one block apart from each other, are located in the nucleus of the town. It was at the Dandridge crossing, the southernmost of the four crossings, that the collision giving rise to this action occurred.

Ms. Johnston lived just two blocks from the Dandridge crossing. It may be presumed that she was aware of the crossing and of the heavy rail traffic that passed through Kensett each day (fifty-seven trains on the day of the accident). The warning devices at the Dandridge crossing consisted of a crossbuck and flashing lights; there was no crossing gate present.

In the late morning of May 26, 1995, Ms. Johnston was driving her car east on Dandridge street toward the crossing. A Union Pacific train, consisting of two locomotives and thirty-seven cars, was contemporaneously traveling north toward that same intersection. Well before the train approached the crossing, its horn began to sound and the crossing lights began to flash. According to the trial testimony of four eyewitnesses, Ms. Johnston appeared to be preoccupied as her car approached the crossing, in that her head was bent downward and she appeared to be looking toward the center of the seat or floorboard. The car windows were rolled up.

The train collided with the car, and Ms. Johnston was ejected from the vehicle, dying instanteously as a result of the injuries suffered in the collision.

In September of 1996, First Security filed a wrongful death suit against Union Pacific under the district court's diversity jurisdiction. See 28 U.S.C. § 1332. The claim was prosecuted primarily on the theory that the railroad had been negligent in

failing to install gates at the Dandridge crossing, rendering it abnormally dangerous under Arkansas law. As indicated above, the jury returned a verdict in favor of the railroad.

## II.

On appeal, First Security challenges various evidentiary rulings made by the district court. Our review of such matters is clear: "Rulings on admissibility of evidence will not be reversed absent a clear and prejudicial abuse of discretion." Pittman v. Frazer, 129 F.3d 983, 989 (8th Cir. 1997). Discretion is so abused "[w]here the district court excludes evidence of a critical nature, so that there is no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted." Adams v. Fuqua Indus., Inc., 820 F.2d 271, 273 (8th Cir. 1987).

The first challenge involves the exclusion of a report prepared in conjunction with an unrelated lawsuit. In 1993, the services of Dr. Kenneth W. Heathington, a traffic engineer, were procured regarding litigation against Missouri Pacific Railroad (a subsidiary of Union Pacific) arising out of a fatal collision at the Dandridge crossing. Dr. Heathington inspected the crossing at that time and rendered his opinion that, primarily due to the absence of gates, it was abnormally dangerous. Dr. Heathington's report was made available to Missouri Pacific, which also deposed him. The case was settled prior to trial.

Dr. Heathington was retained by First Security in connection with the present litigation. He inspected the crossing site again, arriving at essentially the same conclusions. The district court granted a motion in limine by Union Pacific to exclude Dr. Heathington's 1993 report. In so doing, the court stated:

> With respect to Dr. Heathington's 1993 report, the Court finds that this
> report is inadmissible since it was prepared for a different case where Dr.

-3-

Heathington was never cross-examined regarding his conclusions. The Court finds that to present this testimony would be unfairly prejudicial to Defendant, and, therefore, the report will not be admitted. Dr. Heathington, however, will be allowed to testify as an expert regarding his conclusions about the accident surrounding the present litigation.

We conclude that the district court's ruling did not constitute a clear and prejudicial abuse of its discretion. Dr. Heathington's views regarding the condition of the crossing at the time the collision involving Ms. Johnston occurred were fully aired before the jury. The court acted well within its discretion in excluding Dr. Heathington's earlier observations regarding an event that had no immediate nexus to the present claim.

Next, First Security asserts that the district court abused its discretion in excluding evidence of certain prior accidents at the Dandridge crossing. Of the four prior accidents identified as potentially relevant, the court admitted one into evidence and excluded the other three as not being substantially similar. First Security asserts that evidence of the three excluded prior accidents should have been admitted to prove that the railroad was on notice of the alleged dangerous character of the crossing.

Although evidence of prior accidents may be admissible to prove notice on the part of a defendant, any such accidents admitted "must be 'sufficiently similar in time, place or circumstances to be probative.'" Thomas v. Chrysler Corp., 717 F.2d 1223, 1225 (8th Cir. 1983) (quoting Hampton v. Kroger Co., 618 F.2d 498, 499 (8th Cir. 1980) (per curiam)).

Evidence of other accidents may be relevant to the defendant's ability to correct known defects, the magnitude of the danger, the lack of safety for intended uses, or causation. It can also prove notice of the existence of defects. However, evidence of other injuries may also raise extraneous controversial points, lead to a confusion of issues, and present undue prejudice disproportionate to its usefulness. For other accident evidence to be admissible, the proponent of the evidence must show that the facts

-4-

and circumstances of the other incident are substantially similar to the case at bar. The admissibility of other accident evidence is within the discretion of the trial court and its decisions will not be disturbed unless there is a clear and prejudicial abuse of discretion.

Drabik v. Stanley-Bostitch, Inc., 997 F.2d 496, 508 (8th Cir. 1993) (citations omitted); see also Lewy v. Remington Arms Co., Inc., 836 F.2d 1104, 1109 (8th Cir. 1988) (for prior accidents to be relevant to establish notice to defendant, accidents "must have occurred under circumstances substantially similar"). The Supreme Court of Arkansas has expressed a similar view regarding prior railroad crossing accidents. See, e.g., Oates v. St. Louis Southwestern R.R. Co., 587 S.W.2d 10, 11 (Ark. 1979) (en banc) ("before other accidents may be offered to show a dangerous or defective condition, and thereby notice to the defendant, it must first be shown there is a substantial similarity of conditions in the proof as to make it reasonable or probable that the same causes or conditions produced the same or similar results").

In one of the three excluded accidents, the automobile's collision with the train was alleged to have been due to an apparent malfunction of the warning lights. In the two other accidents, the vehicles involved were traveling westward rather than eastward, giving the drivers an entirely different perspective of the crossing. In one of those accidents, the driver was traveling directly into the late afternoon sunlight when the collision occurred. Accordingly, we conclude that the district court committed no clear and prejudicial abuse of discretion in ruling that the three excluded accidents were not substantially similar to the collision involving Ms. Johnston.

First Security also challenges the district court's exclusion of certain testimony offered by Jim Burnett, former chairman of the National Transportation Safety Board, regarding Union Pacific's alleged "corporate indifference" to safety issues. In fact, Burnett was permitted to testify at length regarding his expert opinions of the condition of the Dandridge crossing and other issues. The court excluded only that testimony

specifically related to his assessment of Union Pacific's corporate management structure. We see no abuse of discretion, and certainly nothing clearly prejudicial, in regulating Burnett's otherwise extensive testimony in that limited regard.

First Security similarly protests the exclusion of testimony by Dr. David M. Lipscomb, an audiologist, regarding sound level tests he performed to assess the ability of a driver of 1993 Toyota Celica, the year and model of the car owned by Ms. Johnston, to hear an approaching train's warning horn when the car's windows are rolled up. Subsequent to Dr. Lipscomb's testing of the horn he believed to have been involved in the accident, it was discovered that the actual horn had been replaced and discarded as part of routine maintenance at some time prior to when the tests occurred. Nevertheless, Dr. Lipscomb was prepared to testify that the warning horn employed by Union Pacific was inadequate under the circumstances.

The district court ruled that such a claim was preempted by the Locomotive Inspection Act (LIA), 49 U.S.C. §§ 20701 et seq. (1997).[3] See 49 C.F.R. § 229.129 (establishing federal minimum sound level for audible warning devices on locomotives). We see no error in the court's ruling. See, e.g., Law v. General Motors Corp., 114 F.3d 908, 910-11 (9th Cir. 1997) (BIA preempts state common-law remedies against railroad manufacturers for injuries arising out of alleged design defects in their trains).

> If each state were to adopt different liability-triggering standards, manufacturers would have to sell locomotives and cars whose equipment could be changed as they crossed state lines, or adhere to the standard set by the most stringent state. Either way, Congress's goal of uniform, federal railroad regulations would be undermined.

---

[3]The LIA is also known as the Boiler Inspection Act (BIA).

Id. In any event, the exclusion of Dr. Lipscomb's proposed testimony regarding tests he performed on a warning horn that was not involved in the accident did not constitute a clear and prejudicial abuse of discretion by the district court.[4]

Last, First Security argues that the district court abused its discretion in excluding a memorandum and affidavit by Jeff Rafferty, Union Pacific's superintendent of transportation services. First Security alleged that the presence of railroad cars within 250 feet of the Dandridge crossing had contributed to the accident by obscuring Ms. Johnston's view of the tracks. Union Pacific disputed that any railroad cars were in the vicinity at the time of the accident. Rafferty's memorandum, issued several months subsequent to the accident, instructed Union Pacific employees to enforce a policy that discouraged, "if possible," the placement of cars within 250 feet of the crossing. He later acknowledged that he had issued similar verbal instructions.

The district court excluded the memorandum and affidavit under Rule 407 of the Federal Rules of Evidence as constituting inadmissible evidence of subsequent remedial measures. See O'Dell v. Hercules, Inc., 904 F.2d 1194, 1204 (8th Cir. 1990). We conclude that the district court did not abuse its discretion in so ruling.

The judgment is affirmed.

---

[4]The district court permitted First Security to introduce evidence that the horn had been removed and replaced by Union Pacific after the accident and to argue to the jury that the question whether the horn's decibel level met applicable federal standards was unknowable because the railroad had discarded the horn when it knew litigation involving the incident was a possibility. The court also gave an instruction permitting the jury to draw an adverse inference from the railroad's failure to produce the horn.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.